UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/05/2024
```

BRIAN HOARE, *individually and on behalf of all others similarly situated*,

                                Plaintiff,

        -against-

ODDITY TECH LTD., et al.,

                                Defendants.

24-CV-06571 (MMG)

**<u>OPINION & ORDER</u>**

MARGARET M. GARNETT, United States District Judge:

    Plaintiff Brian Hoare asserts securities fraud claims against Defendant Oddity Tech Ltd. ("Oddity") and individual Defendants Oran Holtzman, Lindsay Drucker Mann, Shiran Holtzman-Erel, Michael Farello, and Lilach Payorski ("individual Defendants"), all of whom are or were executives at Oddity, based on allegedly false and misleading statements and omissions made about Oddity's business, operations, and compliance policies.  This action was brought pursuant to the Private Securities Litigation Reform Act ("PSLRA").  Pending before the Court are two motions to appoint lead plaintiff and lead counsel.  *See* Dkt. Nos. 10, 13.  For the reasons discussed below, the Court appoints Alex Gordon as lead plaintiff and appoints Levi & Korsinsky, LLP as lead counsel.

## FACTS AND PROCEDURAL HISTORY

    Defendant Oddity is a "'consumer tech platform that is built to transform the global beauty and wellness market'" and uses data science, artificial intelligence, and machine learning, among other things, to "identify consumer needs, as well as develop solutions in the form of beauty and wellness products."  Dkt. No. 1 ¶ 2.  Oddity sells beauty, skincare, and haircare products under the brand names Il Makiage and SpoiledChild.  *Id.* ¶ 23.  According to Plaintiff,

Defendants allegedly made materially false and misleading statements between July 19, 2023 and May 20, 2024 (the "Class Period") about Oddity's business, operations, and compliance policies.  Dkt. No. 1 ¶ 5.

> Specifically, Defendants made materially false and/or misleading statements and/or failed to disclose that:  (i) Oddity overstated its AI technology and capabilities, and/or the extent to which this technology drove [Oddity's] sales; (ii) Oddity's repeat purchase rates and revenues were, at least in part, derived from unsustainable and deceptive sales and advertising practices; (iii) Oddity downplayed the true scope and severity of ongoing civil litigation against [it] and/or its subsidiaries; and (iv) as a result, Oddity's public statements were materially false and misleading at all relevant times.

*Id.*  These materially misleading and/or false statements and/or omissions led to the "precipitous decline in the market value of [Oddity's] securities," causing the putative class members to suffer losses.  *Id.* at ¶ 8.

## ANALYSIS

Pending before the Court are two motions for appointment of lead plaintiff and lead counsel, one filed by Brian Hoare—who also happens to be the named plaintiff in the above-captioned case—and the other filed by Alex Gordon.  *See* Dkt. Nos. 10, 13.  Gordon opposes Hoare's motion.  Dkt. No. 19.  Hoare submitted a notice of non-opposition to Gordon's motion, informing the Court that "it appears that Hoare does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA."  Dkt. No. 18 at 2.  Thus, Gordon's motion is essentially unopposed.

### I.    Gordon is Appointed as Lead Plaintiff

#### a.  Legal Standard

The PSLRA "governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under federal securities laws" and "directs the court to appoint as lead plaintiff the party or parties 'most capable of adequately representing the interests

of class members.'" *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 464 (S.D.N.Y. 2023) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). Prospective lead plaintiffs must file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

The PSLRA establishes a "rebuttable presumption that the most adequate plaintiff is the person who: "(1) either 'filed the complaint' or 'made a motion in response to a notice'; (2) has the 'largest financial interest in the relief sought by the class'; and (3) 'satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Turpel*, 704 F. Supp. 3d at 464 (internal references omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)). This presumption can be rebutted only through a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### b. Notice and Timing

To meet the timely filing and notice requirements of the PSLRA, the parties are required to publish notice of the pendency of the action, the asserted claims, and the class period in a widely circulated national business-oriented publication. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also advise purported class members that, not later than 60 days after the publication of the notice, any purported class member may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). "Accordingly, a movant for lead plaintiff must either (1) file the complaint or (2) make a motion for lead plaintiff associated with the first-filed complaint within sixty days." *May v. Barclays PLC*, 23-cv-2583 (LJL), 2023 WL 5950689, at *6 (S.D.N.Y. Sept. 13, 2023).

Here, in connection with the filing of the complaint, Plaintiff Hoare published notice of the action in the publication *GlobeNewswire*, a national wire service, on July 20, 2024. *See* Dkt. No. 12-3; Dkt. No. 15-3 at 2; *see also Turpel*, 704 F. Supp. 3d at 463 (S.D.N.Y. 2023) (stating that *GlobeNewswire* is a "widely circulated national business-oriented publication or wire service" (internal references omitted)). The notice informed investors of the pendency of the action and further informed them of the September 17, 2024 deadline to seek appointment as lead plaintiff. Dkt. No. 12-3 at 2. On September 17, 2024, movants Hoare and Gordon filed their motions for appointment of lead plaintiff and lead counsel. *See* Dkt. Nos. 10, 13. Both pending motions were filed within the statutorily required sixty-day timeframe and are therefore timely.

### c. Gordon has the Largest Financial Interest in the Relief Sought

Although the PSLRA establishes a rebuttable presumption that the most adequate person is the person or group that has the "largest financial interest in the relief sought by the class" and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the statute does not establish a method by which to calculate who has the "largest financial interest in the relief sought by the class." *See May*, 2023 WL 5950689, at *7; *In re Fuwei Films Sec. Litig*., 247 F.R.D. 432, 436 (S.D.N.Y. 2008). Similarly, the Supreme Court and Second Circuit have not specified a method for this calculation. *May*, 2023 WL 5950689, at *7.

Despite this lack of clarity, district courts throughout the Second Circuit generally consider four factors, called the *Lax/Olsten* factors, to evaluate the financial interest of prospective lead plaintiffs: "'(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'" *Id.* (quoting

*In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996)).  Courts consider the fourth factor to be the most important factor in this analysis.  *See, e.g.*, *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014).

Applying the *Lax/Olsten* factors to this case, Gordon states that he (1) purchased 400 Oddity shares during the Class Period; (2) retained 400 net shares; (3) spent a net total of $20,756.00 during the Class Period; and (4) suffered an approximate loss of $4,933.57.  Dkt. No. 11 at 4; Dkt. No. 19 at 1, 4.  Hoare, on the other hand, alleges that he spent $3,500 on the purchase of 78.79 Class A ordinary shares of Oddity, he has retained 49.832 of his shares, and he has "incurred losses of approximately $280 in connection with his Class Period transactions in Oddity securities."  Dkt. No. 14 at 7.  Thus, Gordon alleges a significantly greater financial interest in the relief sought by the class.

### d.   Gordon Meets the Requirements of Rule 23

Once the Court identifies the prospective lead plaintiff with the largest financial stake in the litigation, it must then focus its inquiry on whether that prospective lead plaintiff satisfies the other statutory requirements of the PSLRA.  *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (internal references omitted).  The prospective lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, but at this early stage in the litigation, courts need only consider whether the prospective lead plaintiff satisfies the typicality and adequacy prongs of Rule 23.  *See id.*; *Aude v. Kobe Steel, Ltd.*, 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018) ("The Rule 23 analysis in the context of appointment of lead plaintiff 'need not be as complete as would a similar determination for the purpose of class certification.'" (quoting *In re eSpeed Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005))).

"Movants can demonstrate typicality by showing that their claims 'arise from the same conduct from which the other class members' claims and injuries arise[.]'" *Chauhan v. Intercept Pharm.*, 21-cv-00036 (LJL), 2021 WL 235890, at *3 (S.D.N.Y. Jan. 25, 2021) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)).  "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." *Canson v. WebMD Health Corp.*, Nos. 11 Civ 5382 (JFK), 11 Civ. 6031 (JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (internal references omitted).

Gordon argues that his claims are typical of the claims asserted by the proposed class because, like other putative class members, Gordon "alleges that Defendants' material misstatements and omissions concerning Oddity's business, operational and financial results violated the federal securities laws" and Gordon purchased Oddity securities during the Class Period.  Dkt. No. 11 at 7; *see also* Dkt. No. 19 at 5 ("Gordon's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members because he acquired Oddity securities at prices that were artificially inflated by Defendants' misconduct and suffered losses when the truth was revealed.").

Here, Gordon's claims are based on the same legal theory (violations of the Securities and Exchange Act) and arise from the same events and course of conduct (Defendants' alleged false and/or misleading statements concerning Oddity's business practices and compliance policies) as the prospective class's claims.  Dkt. No. 11 at 7; Dkt. No. 19 at 5; *see also Reitan*, 68 F. Supp. 3d at 400.  These facts are sufficient to make a preliminary showing of typicality. Moreover, there are no facts in the record or arguments in opposition to suggest at this time that

Gordon's claims are not typical of the claims of other class members. Accordingly, the typicality prong is satisfied for present purposes.

"A presumptive lead plaintiff is adequate if they (1) have no conflict of interest with the other members of the class, (2) have sufficient interest in the outcome of the case, and (3) have selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *May*, 2023 WL 5950689, at *18 (internal references and marks omitted). There is no evidence of antagonism or conflict between the interests of Gordon and putative class members, nor is there any indication at this time that a conflict of interest will develop over the course of the litigation. Gordon has a compelling interest in this action based on his financial interest in the outcome of the case. Finally, as discussed below in more detail, *see infra* § II, Gordon has selected highly experienced counsel who are qualified to handle a securities class action of this type. In sum, Gordon has "retained well-qualified and experienced counsel, his degree of losses suggests that he will have a sufficient interest in advocating on behalf of the putative class members, and there is no reason to believe that his claims would be subject to any unique defenses." *Aude*, 2018 WL 1634872, at *4. Therefore, the adequacy prong is satisfied for present purposes.

Because Gordon has made the requisite preliminary showing of typicality and adequacy under Rule 23 of the Federal Rules of Civil Procedure, he has satisfied the third element of the PSLRA Lead Plaintiff analysis.

*    *    *    *

Gordon timely filed his motion for appointment as lead plaintiff, has shown that he has the largest financial interest in the outcome of this litigation among the movants for lead plaintiff status, and has shown that he satisfies the typicality and adequacy elements of Rule 23. As no

party has rebutted Gordon's status as the presumptive lead plaintiff, Gordon is hereby appointed lead plaintiff in the instant action.

## II.    Levi Korsinsky, LLP is Appointed as Lead Counsel

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal references omitted); *see also May*, 2023 WL 5950689, at *19.

Here, Gordon selected the law firm Levi Korsinsky, LLP, a firm that has significant experience (and success) with securities class action litigation. *See* Dkt. No. 11 at 8–9; *see also* Dkt. No. 12-5. The Court is confident that this firm can adequately represent the interests of the prospective class, and there are no facts that warrant the Court to go against the "strong presumption" in favor of appointing the lead plaintiff's selection of counsel and lead counsel. Therefore, the Court appoints the law firm Levi Korsinsky LLP as lead counsel.

## CONCLUSION

For the aforementioned reasons, Alex Gordon's motion to appoint lead plaintiff and lead counsel is hereby GRANTED, such that Alex Gordon is appointed as lead plaintiff and Levi Korsinsky, LLP is appointed as lead counsel. Brian Hoare's motion to appoint lead plaintiff and lead counsel is hereby DENIED. Consistent with the Court's October 21, 2024 Order, within fourteen (14) days of the date of this Opinion and Order, the parties shall jointly submit a proposed schedule for filing any amended complaint, Defendant Oddity's answer, opposition, or response thereto, and, if necessary, deadlines for oppositions and replies for any contemplated motions to dismiss.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 10 and 13.

Dated:  December 5, 2024
         New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge