PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN HOARE Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ODDITY TECH LTD., ORAN HOLTZMAN, LINDSAY DRUCKER MANN, SHIRAN HOLTZMAN-EREL, MICHAEL FARELLO, LILACH PAYORSKI, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, ALLEN & COMPANY, BOFA SECURITIES INC., BARCLAYS CAPITAL INC., TRUIST SECURITIES, INC., JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., EVERCORE GROUP, LLC, and J.P MORGAN SECURITIES LLC., <br><br> Defendants. | Case No. 1:24-CV-06571-MMG <br><br> CLASS ACTION |

**DEFENDANTS' JOINT REPLY MEMORANDUM
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT ........................................................................................................................2

      I.     PLAINTIFFS FAIL TO PLEAD A SECTION 11 CLAIM...................................2

           A.     Plaintiffs' Section 11 Claims Sound in Fraud and Are Subject to Heightened Pleading Requirements..............................................................2

           B.     Plaintiffs Fail To Allege a Material Misrepresentation in the Registration Statements. ...................................................................................................2

           C.     Plaintiffs Are Required To Plead Scienter But Fail To Do So. ....................7

           D.     Plaintiffs Do Not Plead Cognizable Losses from the IPO and Cannot Trace Any Purchases To the SPO. ..........................................................................8

           E.     Plaintiffs' Claims Are Time-Barred. ..........................................................10

      II.    PLAINTIFFS FAIL TO STATE A RULE 10B-5 CLAIM. ...................................11

           A.     Plaintiffs Do Not Plead Misleading Statements or Omissions. .................11

           B.     Plaintiffs Do Not Plead Facts Showing a Strong Inference of Scienter for Any Defendant. .....................................................................................11

           C.     Plaintiffs Do Not Plead Loss Causation.....................................................14

            D.     Plaintiffs Do Not Plead Scheme Liability...................................................14

      III.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE CONTROL PERSON LIABILITY. ......................................................................................................14

CONCLUSION...................................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akerman v. Oryx Communications, Inc.*, 810 F.2d 336 (2d. Cir. 1987) ..........................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................9

*Ganino v. Citizens Utilities Co.,* 228 F.3d 154 (2d Cir. 2000). .....................................................14

*Greco v. Qudian, Inc.*, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ..........................................12

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot.
    Grp.*, 783 F.3d 383 (2d Cir. 2015) ....................................................................................4, 13

*In re Allied Capital Corp. Sec. Litig.*, 2003 WL 1964184 (S.D.N.Y. April 21, 2003) ...................4

*In re Am. Express Co. Sec. Litig.*, 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008), *aff'd sub
    nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) .......................................13

*In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744 (1st Cir. 2016) .................................................9

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) .........................................9

*In re Chembio Diagnostics Sec. Litig.*, 616 F. Supp. 3d 192 (E.D.N.Y. 2022) ..............................7

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009) .............................12

*In re Diebold Nixdorf, Inc., Securities Litigation,* 2021 WL 1226627 (S.D.N.Y. Mar. 30,
    2021) ...............................................................................................................................12

*In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419 (S.D.N.Y. 2009) ..............................................9

*In Re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y.) ...........................................................14

*In Re Livent Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) ...............................................14

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ....................................7

*In re Pareteum Sec. Litig.*, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) .....................................9

*In Re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ................................................3, 11

*In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23 (E.D.N.Y. 2021) .......................................................7

*Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144 (S.D.N.Y. 2015) .....................................12

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035
    (S.D.N.Y. Mar. 30, 2021) ...........................................................................................................5

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ................................................................................13

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617 (2d Cir. 2009) ........................2

*Rose v. Butterfly Network, Inc.*, 2025 WL 501427 (D.N.J. Feb. 13, 2025) ....................................10

*Schiro v. Cemex, S.A.B. de C.V.,* 396 F. Supp. 3d 283 (S.D.N.Y. 2019).........................................5

*SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) ...........................................................................14

*Stevelman v. Alias Research, Inc.*, 174 F.3d 79 (2d Cir. 1999) ......................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................12

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ...............................................................11

*Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323 (S.D.N.Y. 2011) ..............................................12

**Statutes & Rules**

PSLRA ........................................................................................................................................1, 2, 12

F.R.C.P. 8 ...........................................................................................................................................2

F.R.C.P 9 ....................................................................................................................................1, 2, 8

F.R.C.P. 11 .......................................................................................................................................10

Section 10(b)...............................................................................................................................11, 14

Section 11.............................................................................................................................2, 7, 8, 11

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that the Second Amended Complaint ("SAC") is devoid of well-pled facts necessary to allege the elements of a securities claim—even after Defendants' motion to dismiss the prior complaint explained the deficiencies and Plaintiffs repled. Plaintiffs repeatedly ask this Court to excuse their pleading failures and allow them to go on a fishing expedition in the hope that discovery may uncover facts needed to file a complaint in the first place. (Opp. 27, 30.) This is precisely what the PSLRA and Rule 9 prohibit.

Most glaringly, Plaintiffs are unable to contend with two undisputed facts that unravel their complaint. *First*, Oddity's brick and mortar business in Israel represented a tiny fraction of its operations that is presumptively immaterial as a matter of law. *Second*, the supposedly devastating revelations at the heart of the SAC barely registered on investors' radar: within days of NINGI's sensationalist Report (the "Report"), Oddity's stock course corrected and soon traded at prices significantly higher than pre-Report. Since filing suit, Oddity's stock has risen to above $50. (Ex. 5.)

Against this undisputed backdrop, Plaintiffs are unable to allege any material misstatement, much less the "systematic fraud" they claim. For example, Plaintiffs allege that Oddity intentionally concealed its Israeli stores even though they were in plain view, listed on Oddity's website and referenced in news articles. Plaintiffs ask the Court to ignore all this and assume that no reasonable investor—in a Company incorporated in Israel and founded and run by Israeli nationals—would bother to visit the Company's Israeli website, because it is in Hebrew (Opp. 20, 22), but information about the stores was likewise disclosed in English-language news articles and a press release (Reply Exs. 10-14). And Plaintiffs ask the Court to infer that there is no "technology" at Oddity based on statements by three unidentified former employees, who did not work in Oddity's technology department and thus have no credible basis

to make that claim.  (Opp. 12.)  Plaintiffs' theory of fraud is thus *im*plausible, meaning they cannot establish falsity or the requisite strong inference of scienter.  And Plaintiffs likewise fail to allege loss causation, because the supposedly concealed information was known to investors and caused Plaintiffs no cognizable losses.

Plaintiffs ask this Court to hold Oddity responsible for NINGI's self-interested attempt to suppress Oddity's stock price at investors' expense.  The fact that NINGI temporarily succeeded is unfortunate, but cannot establish a fraud claim against Defendants.  Plaintiffs have had multiple opportunities to remedy their pleading deficiencies; they cannot do so.  This case should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD A SECTION 11 CLAIM.

#### A.    Plaintiffs' Section 11 Claims Sound in Fraud and Are Subject to Heightened Pleading Requirements.

Plaintiffs' Section 11 claims sound in fraud and are therefore subject to the heightened pleading requirements under Rule 9 and the PSLRA.  (Mot. 11-12.)  Plaintiffs' only response is a Second Circuit summary order that dealt with allegedly negligent disclosures.  (Opp. 14 (citing *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 620-21 (2d Cir. 2009)).)  Plaintiffs' claims would fail even if they alleged negligent errors and Rule 8 applied, but that is not what Plaintiffs do.  They allege "a systematic attempt to mislead investors"—clearly fraud, not negligence.  (Opp. 8.)

#### B.    Plaintiffs Fail To Allege a Material Misrepresentation in the Registration Statements.

***Israeli Stores***.  Plaintiffs concede the basic facts establishing that investors were not misled about Oddity's brick-and-mortar stores in Israel.  Plaintiffs do not dispute that:  (1) the Registration Statements described Oddity as only "*almost* entirely online", indicating that Oddity

2

had certain limited physical operations (Opp. 19); (2) the stores accounted for less than 5% of Oddity's revenue (Opp. 24) and were profitable (Mot. 13); (3) the Registration Statements disclosed Oddity's real estate leases to operate "stores" and their associated costs (Opp. 19); and (4) public news sources and Oddity's own website (in Hebrew—unsurprisingly, given that Oddity is incorporated in, and the relevant stores operate in, Israel) publicized Oddity's Israel stores (Opp. 20).[1]

None of Plaintiffs' quibbles is availing. Recognizing that Oddity disclosed that it operated "*almost* entirely online" and explicitly identified its lease liabilities and operating expenses, Plaintiffs now claim that those disclosures concealed "the size and scope of the Israeli operations" and "lump[] all leases into one statement". (Opp. 19-20.) But the core of Plaintiffs' claim is that the stores were concealed entirely, not that their size and scope were misstated. (SAC ¶¶ 50, 57, 69.) For good reason: Oddity has no duty to disclose the exact number of storefronts or to separate out individual leases. *See In Re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) (omission inactionable absent duty to disclose).

Conceding that the precise stores and their locations were disclosed on Oddity's website, Plaintiffs argue that the Court should disregard this because the website is in Hebrew. (Opp. 20.) But Oddity was founded by Israeli nationals, is incorporated in Israel and maintains its R&D operations in Israel. (Ex. 1 at 62, 112.) It is thus implausible that Oddity analysts and investors would disregard Hebrew-language information (or lack "the presence of mind" to search for it). (Opp. 22.) Plaintiffs allege that "the market for Oddity securities promptly digested current

---

[1] Plaintiffs concede that the Court may take judicial notice of the documents containing this publicly available information, although not for the truth of their contents. (Opp. 13 n.2.) Defendants only ask the Court to take judicial notice that the information was publicly available, and thus Oddity could not and did not mislead anyone about its operations.

information regarding Oddity from publicly available sources and reflected such information in the price of Oddity securities." (SAC ¶ 225.) Plaintiffs cannot cherry pick which facts they prefer to be incorporated into the market price of an efficiently traded stock. Moreover, Plaintiffs simply are wrong that "[n]one of the 'publicly available information' regarding Oddity's Israeli presence was published in English language public sources". (Opp. 20.) Prior to the IPO, English-language articles reported that "the company has 41 stores in Israel and five colleges teaching the cosmetics professions". (Reply Exs. 10-13; *see also* Reply Ex. 14.) Plaintiffs' cited authorities therefore are not applicable.

Finally, even if Plaintiffs were correct to claim the stores were not disclosed (they are not correct), any nondisclosure would be immaterial. Plaintiffs concede that the Israel stores account for less than 5% of Oddity's revenue and that the Second Circuit imposes an "assumption of immateriality" on such *de minimis* operations. (Opp. 24.) Plaintiffs offer no valid basis to disregard this safe harbor.[2] Plaintiffs' focus on the costs associated with the stores is nonsensical, as those costs were reflected in Oddity's fully-disclosed financial statements, which Plaintiffs do not challenge. (Opp. 23.) Further, Plaintiffs do not dispute that the Israel stores are profitable, making it *im*plausible that the costs of running them would be material to a reasonable investor. (Mot. 13.) The temporary drop in Oddity stock price following the Report cannot support materiality either; if anything, the price rebound within days demonstrates *im*materiality. *In re Allied Capital Corp. Sec. Litig.*, 2003 WL 1964184, at *6 (S.D.N.Y. April 21, 2003) ("[T]he

---

[2] Plaintiffs cite *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 390-91 (2d Cir. 2015), noting that other "qualitative factors should be considered." (Opp. 24.) Plaintiffs do not articulate these factors, however, because none of them is applicable here.

4

stock price's recovery… negates any inference of materiality, because it indicates that investors quickly determined that the 'new' information was not material to their investment decisions.").

*Technology.*   Plaintiffs complain that Oddity's Registration Statements mention "AI" "over 40 times" (Opp. 16) and reference Oddity's digital platform "over 96 times" (Opp. 15), but identify no facts to suggest that Oddity did not utilize AI or focus on its digital platform. Oddity's references to its technology and digital platform comport with that digital platform representing over 95% of its revenue.  Plaintiffs' reliance on the conclusory accusations by Confidential Witnesses ("CWs") that "there is no significant technology" at Oddity are unavailing for two reasons.  *First*, no CW is alleged to have worked in Oddity's technology team, in the corporate workforce where that technology team is situated, or in the global direct-to consumer business that uses the technology.  Indeed, all CWs apparently worked in Oddity's legacy Israel business (two working in retail stores and one working with the e-commerce aspect of that brick-and-mortar business).  (Opp. 17.)  Accordingly, none had any basis to opine whether Oddity used AI on its global (ex-Israel) digital platform.  (Mot. 24.)  "[C]ourts generally have not credited the statements of CWs in situations where [] their descriptions do not suggest that they were in a position to know the facts attributed to them." *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at \*11 (S.D.N.Y. Mar. 30, 2021).  *Second*, the CW's statements—including that there is "no significant technology"—are so vague as to be meaningless and lack any specific supporting facts.  *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305-306 (S.D.N.Y. 2019) (rejecting "[g]eneric and conclusory allegations" of CW as "so vague as to be meaningless").

Plaintiffs also argue that Oddity's disclosure that its technology team comprised "over 40% of its headcount" (Opp. 17) is misleading because it omits retail store employees.  That

5

allegation is not in the SAC, and it is wrong. Plaintiffs misleadingly truncate Oddity's statement, which specifically disclosed that 40% of Oddity's "*corporate* workforce" worked in its technology team. (Ex. 1 at 127.) Oddity specifically excluded employees working outside its "corporate workforce". Nothing in Plaintiffs' allegations suggests this statement is false or misleading, nor is it inconsistent with Oddity employing any number of sales people in its stores.

Finally, Plaintiffs do not dispute that many of Oddity's statements were forward-looking and accompanied by cautionary language (and thus protected by the safe harbor, *see* Mot. 15), such as descriptions about Oddity's future plans. (Opp. 18.) Plaintiffs focus instead on statements that Defendants have *not* described as forward looking; those statements were accurate descriptions of Oddity's business and Plaintiffs have not plausibly alleged any were false or misleading *when made*. (Opp. 18; Mot. 15.) It is not enough to allege that a future business plan did not come to fruition.

*Marketing.* Defendants showed that Oddity did not conceal—rather, it explicitly disclosed—that it engages in conventional marketing. (Mot. 16.) Oddity disclosed not only that it invests in "performance marketing", but that its "business depends" on the ability to maintain a base of customers through social media and "a variety of marketing channels". (*Id.*; Ex. 1 at 10, 86, 126.) In their Opposition, Plaintiffs pivot, arguing that Oddity misstated the extent to which these marketing practices, rather than Oddity's "tech platform", drove Oddity's sales. (Opp. 17.) But Plaintiffs do not allege that Oddity disclosed that technology, *rather than marketing*, drives its sales. To the contrary, Oddity disclosed that if its "marketing efforts are not successful, [its] business, financial condition, and results of operations would be adversely affected". (Ex. 1 at 19.) Plaintiffs further argue that Oddity did not disclose that its marketing could "create reputational risk, and upset consumers, which could lead to regulatory investigations". (Opp. 20-

21.)  Plaintiffs again ignore the Registration Statements, which disclosed that Oddity's "brand also may be negatively impacted" "if consumers perceived [it] as being irresponsible or untruthful in [its] marketing" and that "[r]egulators and private plaintiffs have brought enforcement and litigation actions against companies, challenging automatic renewal and subscription programs".  (Ex. 1 at 45.)

*Litigation*.  Plaintiffs do not dispute that Oddity disclosed that it was involved in litigation.  (Mot. 17.)  These risk disclosures were not "vague" (Opp. 21), but rather addressed the specific litigation-related risks that Plaintiffs allege had been concealed.  Plaintiffs complain that the *number* of lawsuits and precise *claims* involved were not expressly disclosed, but Oddity has no obligation to disclose that specific information unless it were material, and Plaintiffs allege no facts to suggest materiality, whether individually or in the aggregate.  *See* Mot. 21;  *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 36 (E.D.N.Y. 2021).

## C. Plaintiffs Are Required To Plead Scienter But Fail To Do So.

Defendants' Motion showed that Plaintiffs' Section 11 claims fail also because the SAC does not adequately plead scienter.  (Mot. 18.)  Plaintiffs respond that their case is based on strict liability.  (Opp. 14.)  Not so.  The Opposition makes clear that Plaintiffs allege "a systematic attempt to mislead investors"—fraud.  (Opp. 8.)  Indeed, Plaintiffs make the same allegations in their fraud-based Section 10(b) claims as they do for Section 11.  (Mot. 10.)  Because Plaintiffs use Section 11 to assert fraud-based claims, they must plead scienter.  Mot. 18; *In re Chembio Diagnostics Sec. Litig.*, 616 F. Supp. 3d 192, 203 (E.D.N.Y. 2022) (collecting cases).

Plaintiffs' observation that Section 11 *generally* does not require scienter is irrelevant.  As the Second Circuit recognized in *Morgan Stanley*—cited by Plaintiffs—"[w]here [Section 11] claims are 'premised on allegations of fraud', the allegations must satisfy the heightened particularity requirements of Rule 9(b)".  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d

347, 358 (2d Cir. 2010). Plaintiffs' Section 11 claims should be dismissed for failure to plead scienter. (*See* Mot. 18.)

### D. Plaintiffs Do Not Plead Cognizable Losses from the IPO and Cannot Trace Any Purchases To the SPO.

*IPO.* Defendants' Motion showed that, following the Report, Oddity's stock price dropped briefly but still remained *above* the IPO price ($35.00). Because neither Plaintiff sold their shares below that IPO price following the Report, they did not suffer cognizable damages and lack standing to bring their Section 11 claims. Plaintiffs ask this Court to disregard these undisputed facts because loss causation *ordinarily* is not addressed on a motion to dismiss. But loss causation *is* appropriately addressed where, as here, the lack of cognizable losses is established on the face of the Complaint. (Mot. 18-20.)

Plaintiffs attempt to avoid this outcome by relying on Plaintiff Hoare's sales of Oddity stock for $34.50 *before* the Report. But losses from sales before the alleged corrective disclosure could not have been caused by a Section 11 violation as a matter of law. (*See* Mot. 19-20 (citing cases).) The logic is simple: if the "truth" has not been revealed, then the loss must have been caused by something else. Plaintiffs try to avoid their own allegations that the Report revealed the truth by arguing that *pre*-NINGI stock price declines "were the result of concerns indicated about Oddity's business that were fully revealed by the publication of the NINGI Report". (Opp. 27.) The SAC alleges no such concerns; to the contrary, it alleges that pre-NINGI declines were caused by news of Oddity investors' intent to sell stock—a concern wholly unrelated to the alleged fraud. (SAC ¶ 106.)

Faced with an unambiguous lack of causation, Plaintiffs request discovery to seek a connection between the pre-NINGI decline and the alleged fraud. (Opp. 27.) That puts the cart before the horse, and Plaintiffs provide no precedent supporting it. *Akerman v. Oryx*

*Communications, Inc.*, 810 F.2d 336, 342 (2d. Cir. 1987), confirmed that "the price decline before disclosure [of the fraud] may not be charged to defendants". *Fuwei*, cited by Plaintiffs (Opp. 27), is unavailing because the pre-NINGI decline was not "related to the alleged misrepresentations". *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 444-45 (S.D.N.Y. 2009).

*SPO.*  Plaintiffs' allegations related to the SPO likewise fail—this time because of their inability to trace post-SPO purchases.  (Mot. 20-23.)  Plaintiffs do not dispute that they must plead traceability of their purchases to the SPO.  (Opp. 28.)  The bare legal conclusion that "Plaintiff Hoare acquired Oddity ordinary shares issued pursuant to, or traceable to the 2024 Registration Statement" (SAC ¶ 171) is insufficient.  (Mot. 21-22.)  Although certain district courts entertained such conclusory pleading, those courts applied an outdated standard that is inconsistent with the Supreme Court's directive in *Iqbal* and *Twombly*.  Mot. 23 (citing cases); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").  Every Circuit to consider the issue has held that such conclusory statements are insufficient under the Supreme Court's instructions.  *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 755-56 (1st Cir. 2016); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).[3]

---

[3] In *Pareteum*, Judge Hellerstein disagreed with the First and Ninth Circuits.  Defendants respectfully believe *Pareteum* is wrong.  *Pareteum* gave plaintiffs a free pass, reasoning that "'modern market conditions' make tracing particularly difficult".  *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *20 n. 6 (S.D.N.Y. Aug. 11, 2021).  But the Supreme Court has not recognized a hardship exception to the pleading standard announced in *Iqbal* and *Twombly*, and both of these cases addressed allegations of facts that are challenging for a plaintiff to establish without discovery.  *Twombly*, 550 U.S. at 555-56; *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

Conceding that they cannot plead facts tracing their stock to the SPO, Plaintiffs cite *Rose v. Butterfly Network, Inc.*, 2025 WL 501427 (D.N.J. Feb. 13, 2025) in support of a request to conduct "limited discovery" on traceability. (Opp. 30 n.7.) But *Rose rejected* discovery on that issue in the absence of well-pled facts supporting tracing, *dismissing* the complaint based on the failure to adequately plead tracing. *Rose*, 2025 WL 501427, at *6. *Rose* observed that Rule 11 requires plaintiffs to be "ready enough to lay out the factual allegations as to the claim's basic constituent parts" *before* filing a complaint, such that any complaint must contain at least "rough allegations" about *how* plaintiffs expect to be able to prove tracing. *Id.* at *5-6. Here, as in *Rose*, the SAC does not contain even "rough allegations" about traceability—requiring dismissal, not discovery.

## E.  Plaintiffs' Claims Are Time-Barred.

Plaintiffs insist that their claims are timely because the Report somehow revealed "significant information that was not widely available". (Opp. 30.) Plaintiffs, however, fail to explain what new material information was unearthed, and do not effectively contest that the Report is little more than a series of sensationalist opinions based on publicly available information. Indeed, the Report itself discloses that its information was "obtained from public sources". (Mot. 9, 31-33.) It is uncontroverted that Il Makiage's retail locations were published on its Israeli website and mentioned in other publications before the release of the Report, and Oddity previously disclosed its leases and legal proceedings. (Mot. 24.) Plaintiffs were on constructive notice, and their Section 11 claims against the IPO underwriters and all SPO claims are time-barred. (Mot. 23-25; *see* Mot. 25 (no relation back for Section 11 SPO claims because the SPO claims do not arise out of the same transaction as the IPO claims).)

## II.     PLAINTIFFS FAIL TO STATE A RULE 10B-5 CLAIM.

### A.     Plaintiffs Do Not Plead Misleading Statements or Omissions.

Plaintiffs' alleged misstatements under Section 10(b) are largely identical to those discussed in I.B above and should be dismissed for the reasons presented there.[4]  Moreover, Plaintiffs are required to identify specific false or misleading statements; they cannot stake their claim on the allegation that a disclosure *omitted* some information unless that omission makes some other statement misleading or untrue, which they do not.  (Mot. 28.)  It is irrelevant that Oddity "could have" disclosed more than it did (Opp. 33); every issuer can always disclose more, but the securities laws are not intended to "bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking".  *In re Time Warner,* 9 F.3d at 267; *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49 (1976).  Plaintiffs' speculation that Oddity did not disclose more "because everyone knew that the value of Oddity [would] have plummeted" (Opp. 33) is rebuffed by the facts—Oddity's stock price quickly rebounded and has *increased* since the Report.

### B.     Plaintiffs Do Not Plead Facts Showing a Strong Inference of Scienter for Any Defendant.

Defendants' Section 10(b) claims require Plaintiffs to plead particular facts giving rise to a strong inference of scienter:  one that is at least as compelling as any opposing non-fraudulent inference.  (*See* Mot 29; Opp. 34.)  Plaintiffs rely almost entirely on allegations concerning Oran Holtzman's alleged scienter, even though they never served Holtzman and his scienter cannot be

---

[4] Plaintiffs allege that Oddity's 2023 "Form 20-F omits completely any mention of Oddity's legacy retail and services presence in Israel as well as its reliance on conventional marketing" (Opp. 33), but Oddity's Registration Statements (issued before and after the referenced Annual Report) adequately disclosed these issues (to the extent they required disclosure) and were part of the information publicly available at the time of the Annual Report.  (*See* Mot. 12-17.)

11

imputed to the Individual Defendants that Plaintiffs have served—Drucker Mann or Farello. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) ("[G]uilt by association is impermissible"). Drucker Mann and Farrello should thus be dismissed due to an utter failure to plead scienter as to them. *Greco v. Qudian, Inc.*, 2022 WL 4226022, at *25 (S.D.N.Y. Sept. 13, 2022).

In addition, the Holtzman allegations do not give rise to a strong inference of scienter as to *any* Defendant. Plaintiffs argue—with no factual support—that Holtzman was aware of certain information that purportedly contradicted Oddity's public statements, but as demonstrated above, those public statements did not misstate or omit material information. *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (allegation that individual "had or should have had knowledge" by virtue of corporate position insufficient). Moreover, if any alleged falsity would give rise to a strong inference of scienter, then that would write the separate element of scienter out of the PSLRA. That is not the law. Plaintiffs also point to the fact that public news reports have shown Holtzman visiting stores in Israel, but that public disclosure cuts *against* any intent to conceal. (Opp. 35.) A strong inference of scienter "must be cogent and compelling", not nonsensical. *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Plaintiffs also rely on the "core operations" theory. (Opp. 38.) Plaintiffs' own authority, *In re Diebold Nixdorf, Inc.*, *Securities Litigation*, casts doubt on its viability: "since the enactment of the PSLRA, the Second Circuit has expressed doubt as to whether the core operation[s] doctrine has survived". 2021 WL 1226627, at *15, n.24 (S.D.N.Y. Mar. 30, 2021). Even if viable, it "does not independently establish scienter"; Plaintiffs' other scienter allegations "do not measure up" and core operations cannot be "a life raft". *Id.* at *15; *Tyler v. Liz*

12

*Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (same); Mot. 29-31.  Moreover, given that the Israel stores account for less than 5% of Oddity's revenue, they are presumed to be immaterial—and thus are *not* core operations, but peripheral ones.  *See IBEW Local Union*, 783 F.3d at 390.

Plaintiffs' CW allegations (Opp. 12-13) cannot save them.  As noted above, Plaintiffs do not claim that any was a member of Oddity's technology team, interacted with Holtzman, or was otherwise in a position in the technology business; without such foundation, their statements cannot support a strong inference of scienter.  *See In re Am. Express Co. Sec. Litig.*, 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 604 F.3d 758 (2d Cir. 2010).

Nor do Plaintiffs sufficiently plead a motive to deceive.  Plaintiffs point to the fact that Holtzman sold shares in the IPO (Opp. 38-39), but do not address the Second Circuit authority holding that stock sales in public offerings are insufficient to support scienter because such sales are routine, not suspicious.  (*See* Mot. 30.)  Plaintiffs' cited authority is inapposite.  *Stevelman v. Alias Research. Inc.,* addresses "unusual" stock sales unrelated to an IPO.  174 F.3d 79, 85–86 (2d Cir. 1999).  *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000), likewise did not address IPO-based sales and applied the defunct pre-PSLRA standard for scienter.

Finally, Plaintiffs assert that Defendants supposedly provided "admissions of knowledge in the response to the NINGI Report".  (Opp. 34.)  Oddity's press release simply states that the Israeli brick-and mortar business is an "immaterial part of our business" and "[a]ll of ODDITY's revenue outside of Israel is exclusively from online sales", facts that are consistent with Oddity's representations.  (Ex. 4 at 2; Opp. 24.)  The press release also clarifies that the "hundreds of lawsuits" referenced in the Report are small claims totaling less than $100,000, which, as immaterial proceedings, were not required to be disclosed.  (Ex. 4 at 2.)  Oddity's press release

thus gives no credence to Plaintiffs' claims that Oddity "had knowledge of the falsity of [its] statements", and the market's reaction thereto confirms the market agreed.  (Opp. 35.)

### C.    Plaintiffs Do Not Plead Loss Causation.

Plaintiffs claim that their Section 10(b) allegations regarding loss causation should not be scrutinized at the motion to dismiss stage, citing *Ganino v. Citizens Utilities Co.,* 228 F.3d 154 (2d Cir. 2000).  (Opp. 39.)  *Ganino*, however, related to falsity; it does not relieve Plaintiffs from their requirement to adequately plead loss causation.  The Report's distortions of already-public information cannot constitute a corrective disclosure, particularly given that Oddity's stock rebounded shortly after the Report's publication.  *See* Mot. 31-33; *In Re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 384 (E.D.N.Y.).

### D.    Plaintiffs Do Not Plead Scheme Liability.

Plaintiffs do nothing to remedy their deficient allegation of liability under the "scheme" subsections of Rule 10b-5, and thus concede they have no such claim. Mot. 33; *SEC v. Rio Tinto plc*, 41 F.4th 47, 53-54 (2d Cir. 2022).

## III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE CONTROL PERSON LIABILITY.

Plaintiffs do little to defend the deficiencies of their control person claims. (*See* Mot. 34.) Instead, Plaintiffs rely on the legally deficient position that the Individual Defendants are liable by virtue of their positions at Oddity, a theory consistently rejected in this circuit.  *See In Re Livent Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999).

### CONCLUSION

The SAC should be dismissed.  Because Plaintiffs have had multiple opportunities to address the pleading deficiencies but cannot do so, the Court should dismiss with prejudice.

Dated:  August 27, 2025

Respectfully Submitted,

/s/ Yonatan Even
Yonatan Even
Lauren M. Rosenberg
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
yeven@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendants Oddity Tech*
*Ltd., Lindsay Drucker Mann and Michael*
*Farello*

/s/ Susan L. Saltzstein
Susan L. Saltzstein
Robert A. Fumerton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
susan.saltzstein@skadden.com
robert.fumerton@skadden.com

*Attorneys for Underwriter Defendants*

15

## CERTIFICATE OF WORD COUNT COMPLIANCE

Pursuant to local Civil Rule 7.1(c), I certify under penalty of perjury that the foregoing Joint Memorandum of Law in Support of Defendants' Joint Motion to Dismiss contains 4,374 words, excluding items exempted by local Civil Rule 7.1(c).  In making this certification I have relied upon the word count of Microsoft Word, the word-processing system used to prepare the memorandum.

Dated:   August 27, 2025

Respectfully Submitted,

*/s/ Yonatan Even*
Yonatan Even
Lauren M. Rosenberg
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
yeven@cravath.com
lrosenberg@cravath.com

*Attorneys for Defendant Oddity Tech Ltd. Lindsay Drucker Mann and Michael Farello*

/s/ *Susan L. Saltzstein*
Susan L. Saltzstein
Robert A. Fumerton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
susan.saltzstein@skadden.com
robert.fumerton@skadden.com

*Attorneys for Underwriter Defendants*

16