USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/9/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN HOARE, *individually and on behalf of all others similarly situated*,

Plaintiff,

-against-

ODDITY TECH LTD., et al.,

Defendants.

24-CV-06571 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is a putative class action alleging securities fraud. Defendants are Oddity Tech Ltd. ("Oddity"), certain Oddity employees, and various companies who acted as underwriters for Oddity's two IPOs. Plaintiffs are shareholders who purchased Oddity Class A common stock between July 19, 2023 and May 20, 2024. They bring claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, alleging Oddity's disclosure documents to the SEC misrepresented or omitted key details about its business. Before the Court is Defendants' motion to dismiss. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

### I. RELEVANT FACTS[1]

Oddity was founded in 2013 and is an Israeli company. SAC ¶¶ 19, 41. That same year, its owner acquired a U.S.-based makeup company called Il Makiage. *Id.* ¶ 44. Since its

[1] These facts are taken from the Second Amended Complaint, Dkt. No. 66 ("SAC"), the "Ningi Report," Dkt. No. 61-3, and Oddity's 2023 and 2024 Registration Statements, Dkt. Nos. 78-1–6 and 78-13, respectively. *See Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) ("In deciding a

acquisition by Oddity, Il Makiage sells various beauty products under its brands in a number of countries, and also operates brick-and-mortar makeup stores and beauty schools in Israel. *Id.* ¶¶ 43, 47. For its branded beauty products, Il Makiage uses a try-before-you-buy business model. Dkt. No. 78-13 at 40; SAC ¶ 86. Customers receive makeup and beauty products and, other than shipping and handling costs, are charged for the product only if they decide to keep it; customers can also subscribe to receive future shipments of the product. Dkt. No. 78-13 at 97; SAC ¶ 86. Some customers have complained on social media or elsewhere that Il Makiage sometimes begins billing consumers even though they did not wish to subscribe, or continues charging them even after they cancel. SAC ¶¶ 86, 91–93.

Oddity rebranded on several occasions and—as of 2019—began referring to itself as a "technology company" while seeking to expand its technological capacities. *Id.* ¶¶ 94, 100. In advance of its expansion into the United States and public offering in 2023, Oddity filed several registration documents with the SEC (the "2023 Registration Documents"). *Id.* ¶¶ 101–04. These Registration Documents reinforced Oddity's positioning as a "tech company." *Id.* ¶¶ 129–32. For example, the 2023 Registration Statement states: "We are a technology company at our core and have created a purpose-built platform for the beauty and wellness industry to scale our digitally native brand portfolio." *Id.* ¶ 129. The 2023 Registration Documents also reference certain technological capabilities, such as "patented software technology" or "proprietary algorithms and machine learning models." *Id.* Oddity filed additional registration documents in 2024 (the "2024 Registration Documents") in advance of a second public offering. *Id.* ¶ 145.

---

motion to dismiss under Rule 12(b)(6), the court may refer to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

These documents likewise affirmed Oddity's technological capabilities and identity. *Id.* The 2023 and 2024 Registration Documents explain that Oddity uses conventional marketing techniques and "invest[s] strategically in performance marketing, such as paid search and product listing advertisements" and "paid social media advertisements." Dkt. Nos. 78-1 at 95; 78-13 at 85. The Registration Documents also include litigation disclosures, explaining Oddity was "currently involved in, and may in the future be involved in legal proceedings, claims, and government investigations." SAC ¶ 142. The Registration Documents state that Oddity did not believe the outcome of any pending matters in the aggregate would have a material adverse effect on its "business, financial condition[s] and results of operations." *Id.* They also disclosed that Oddity was subject to laws proscribing automatically renewing customers for subscription services without their consent, which could result in "substantial legal fees and costs and reputational harm." Dkt. Nos. 78-1 at 54; 78-13 at 348.

In May of 2024, an entity called NINGI Research published a report criticizing virtually every aspect of Oddity's business (the "Ningi Report"). SAC ¶¶ 10, 122; Dkt. No. 61-3. The report, based on publicly available information, contended Oddity was not truly a tech business and that its brand Il Makiage was, in fact, a traditional brick-and-mortar retailer in Israel. Dkt. No. 61-3 at 7. The report explained that these retail stores appear on Google Maps. *Id.* The report also alleged Oddity had misled investors by failing to disclose numerous lawsuits against it pending in the United States and Israel. SAC ¶¶ 123, 228; Dkt. No. 61-3 at 4.

The allegations in the Second Amended Complaint largely echo the contentions of the Ningi Report. Namely, Plaintiffs contend Oddity either misrepresented or hid several aspects of its business in SEC filings. These so-called misrepresentations and omissions broadly fall into three interrelated categories. First, Plaintiffs allege that Oddity failed to disclose that its brand Il

Makiage operates forty-three retail stores and six or seven beauty schools in Israel, which they argue contradicts Oddity's claimed identity as a technology company. *Id.* ¶¶ 3, 47, 128, 187, 205. Second, Plaintiffs argue that Oddity's self-description as a technology company is misleading and obfuscates Oddity's traditional retail business model for both in-person and online sales. *Id.* ¶¶ 128, 187, 205. Third and last, Plaintiffs contend Oddity failed to adequately disclose the lawsuits against it and its subsidiaries in both Israel and the United States. *Id.* ¶¶ 128, 142, 157, 187.

After Plaintiffs filed the Second Amended Complaint, Defendants moved to dismiss. Dkt. No. 76. They argue, *inter alia*, Plaintiffs have not shown a misrepresentation or omission of material information sufficient to state a claim under the securities laws. The Court agrees, and the motion to dismiss is granted.[2]

[2] Each of Plaintiffs' claims requires as an element a material misstatement or omission. To state a claim under Section 11, "Plaintiff must allege that part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to make the statements therein not misleading." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-CV-00976 (LAP), 2008 WL 4449280, at *10 (S.D.N.Y. Sept. 30, 2008). To state a claim under Section 10(b) of the Exchange Act, a plaintiff must adequately plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 526 (S.D.N.Y. 2015). Furthermore, for a Section 20(a) claim to succeed there must either be a properly alleged primary violation or a viable claim under another provision of the Securities Act or Exchange Act. *Id.* at 527. To state a Section 15 claim for controlling person liability, plaintiffs must allege "(1) an underlying primary violation; and (2) the individual defendant had control over the primary violator." *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 599 (S.D.N.Y 2006). In the present matter, to adequately invoke a Section 20(a) or Section 15 claim, an adequately alleged violation of Section 11 or Section 10(b) is necessary. To state a claim under Rule 10b-5 premised on material omission or misrepresentation, "a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 269 (E.D.N.Y. 2002). Accordingly, dismissal of all these claims is appropriate given Plaintiffs have failed to show a material misstatement or omission. *Sanofi*, 87 F. Supp. 3d at 527.

## DISCUSSION

### I. LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] A claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a Rule 12(b)(6) motion, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, courts are not required to accept as true legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

In assessing the sufficiency of the complaint, the court may consider documents incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint. *See Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 140 (2d Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003). The court may also consider legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit. *Goldstein v. QVT Assocs. GP LLC*, No. 10-CV-02488 (HB),

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

2010 WL 4058157, at *2 (S.D.N.Y. Oct. 15, 2010) (citing *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## II. PLAINTIFFS HAVE NOT PLED A MATERIAL MISTATEMENT OR OMISSION

As explained above at footnote 2, all of Plaintiffs' claims require that they adequately plead that Defendants either misrepresented or omitted a material fact. An omission is actionable if a defendant had a duty to disclose the omitted fact. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015). Such a duty does not exist if the undisclosed information is "readily accessible in the public domain." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013), *aff'd* 566 F. App'x 93 (2d Cir. 2014). In addition, "[a]n omission of information not affirmatively required to be disclosed is . . . actionable only when the disclosure of such information is necessary to make the statements made, in the light of the circumstances under which they were made, not misleading." *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 149 (S.D.N.Y. 2023); *see also Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024) (holding that when a company makes "affirmative assertions" on a matter, omitted information on that topic may be actionable if their disclosure was necessary to make the statements "not misleading"). A misstatement or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 717 (2d Cir. 2011).

Plaintiffs claim that Defendants made material misstatements or omissions in the offering materials regarding three subjects: (1) the existence of Il Makiage's brick-and-mortar operations; (2) Oddity's identity as a technology company and the drivers of its revenue; and (3) pending

lawsuits against Oddity and its subsidiaries in the United States and Israel. None of these claims meet the standards described above.

### A. Il Makiage's Brick-and-Mortar Business in Israel

Plaintiffs first claim that Oddity failed to disclose the existence of Il Makiage's forty-three retail stores and six or seven beauty schools in Israel. But Defendants had no duty to disclose information that was readily publicly available. *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 488 (S.D.N.Y. 2018); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d at 576. The existence of Il Makiage's in-person operations was publicly available information that was easily accessible to any investor. *See, e.g.*, SAC ¶¶ 46, 51–53; *see also* Dkt. No. 61-3 at 7. Images of the stores appear online. *See, e.g.*, Dkt. No. 61-3 at 8. Their addresses are available on Google Maps. *Id.* at 7. News articles in both English and Hebrew reference the stores..[4] *See, e.g.*, Dkt. Nos. 78-12, 83-1 & 83-2. A public statement from one of Oddity's significant early investors referenced Il Makiage's "boutiques" and "makeup artist academies." SAC ¶ 56. Furthermore, Oddity's Registration Documents hedge that its operations are "*almost* entirely online," consistent with the fact that Il Makiage's global operations include some in-person stores in a single country. *Id.* ¶¶ 132, 148, 194 (emphasis added).

### B. Oddity's Self-Description as a Tech Company and Purported Misrepresentation of Its Revenue Drivers

Plaintiffs' next theory of a misrepresentation or omission is more ambiguous and requires some guesswork to piece together. Various aspects of the SAC include uninterrupted and consecutive block quotes of the Registration Documents. Plaintiffs highlight that these aspects of the Registration Documents make numerous references to "AI" and the company's "digital

---

[4] The Court may take judicial notice of newspaper articles "for the purpose of establishing that the information in the various documents was publicly available." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

platform." *See, e.g.*, *id.* ¶¶ 132–33. Plaintiffs then contend "[t]he statements set forth above are misleading because they state that Oddity's sales and growth were primarily the result of its use of AI and proprietary technology" when, according to Plaintiffs, "Oddity's sales are the result of conventional marketing, advertising, and subscription sales." *Id.* ¶ 134. This claim fails in numerous regards. First, the onus is on Plaintiffs to identify with specificity the statements they allege are false. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). Page-long block quotes do not suffice. *See Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37–38 (2d Cir. 2012). Second, even parsing these voluminous quotes, none state that Oddity's revenue derives exclusively or even primarily from the use of technology. And, third, the Registration Documents squarely disclose that Oddity invests in "performance marketing," its business depends on maintaining customers through social media and other typical marketing channels, and its business would be "adversely affected" if its marketing efforts were unsuccessful. *See, e.g.*, Dkt. No. 78-13 at 316, 324, 384.

Plaintiffs also seem to contend that the Registration Documents misrepresent Oddity as a technology company when, in reality, Oddity was simply a traditional retailer with an online presence. *See, e.g.*, SAC ¶¶ 57, 113. As support, Plaintiffs marshal the statements of several confidential witnesses ("CWs"). *Id.* ¶¶ 59–63. But this argument, too, suffers from numerous defects. Plaintiffs never squarely identify a misrepresentation in the Registration Documents. For example, while the Registration Documents reference numerous specific technological features, Plaintiffs never allege those features did not exist. And Plaintiffs' CWs are not alleged to have held positions that would give them insights into Oddity's technological capabilities nor to have provided statements that show Oddity lacked its advertised technological capabilities.[5]

---

[5] CW3 was a former head of products specializing in e-commerce at Il Makiage who stated the success of Oddity is not due to technology. SAC ¶¶ 58, 60. CW3 also stated: "Perhaps they developed

Finally, many of the statements Plaintiffs appear to point to, when viewed in connection with the clear disclosures in the Registration Documents or other public statements, are merely inactionable puffery or forward-looking opinion. For example, statements like "Il Makiage has converted millions of consumers from shopping for beauty products in stores to making purchases online and disrupted the industry in the process," SAC ¶ 95, or that the company is "[d]efining and building the future of beauty through proprietary technology that connects people with superior products fit for them," *id.* ¶ 96, or that the company uses "a proprietary machine learning algorithm matching users to their perfect products based on their unique individual profile," *id.* ¶ 97, which Plaintiffs claim overstate the true nature of Oddity's business, are not material misstatements or omissions because they convey "no meaningful, objective data that an investor would rely upon." *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 570 (S.D.N.Y. 2018); *see also Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (holding that general statements about reputation, integrity, and compliance were too general to cause a reasonable investor to rely upon them).

Accordingly, Plaintiffs' second theory fails, as well.

---

new things. Before we used the term A.I., they had nothing to do with this (artificial intelligence)." *Id.* ¶ 60. There is no allegation about when CW3 left Il Makiage or how CW3 would have insights into Oddity's technological capabilities. *See Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19-CV-07536 (NRB), 2021 WL 1199035, at *11 (S.D.N.Y. Mar. 30, 2021) ("Courts generally have not credited the statements of CWs in situations where their descriptions do not suggest that they were in a position to know the facts attributed to them."). CW1 was a senior executive who worked at Il Makiage's head office in Tel Aviv until 2023 and, when asked whether Il Makiage "used artificial intelligence to generate sales *in Israel*," responded: "[N]o, we didn't use A.I., we used traditional methods doing our best to reach positive results." SAC ¶ 63 (emphasis added). Even assuming Il Makiage did not use AI *in Israel*, the one place it maintained in-person stores, it does not follow that Oddity did not use AI as part of its operations in every other part of the world.

**C. Litigation Involving Oddity and Its Subsidiaries**

Finally, Plaintiffs allege that Oddity failed to disclose the legal actions against it and its subsidiaries pending in the United States and Israel. Not so. The Registration Documents adequately disclosed that Oddity was facing litigation. The 2023 Registration Documents, for example, state that Oddity is "currently involved in, and may in the future be involved in, legal proceedings." Dkt. No. 78-1 at 141. The statement continued that Oddity believes "the final outcomes of any pending matters will not, either individually or in the aggregate, have a material adverse effect on [their] business." *Id.* The statement also disclosed that Oddity accrues loss contingencies on its balance sheet for litigation "when a loss is probable." Dkt. No. 78-2 at 31. Plaintiffs cannot identify anything false in these statements.

Instead, Plaintiffs allege that these statements are overly vague and Oddity should have detailed each of the sort of relatively minor lawsuits that Plaintiffs describe in the Complaint, such as a customer claiming that one or more of the physical stores in Israel was rounding up consumer purchases by a few cents at the register, or a putative class action complaint about unwanted spam text messages, or a discrimination suit by a single employee in one of the beauty schools. SAC ¶¶ 70–84. The securities laws impose no such requirement.

Regardless, even assuming Oddity omitted relevant information, information about the filed lawsuits against it and its subsidiaries were all publicly accessible; therefore, Oddity had no duty to disclose. *Park Yield LLC v. Brown*, No. 18-CV-01947 (GBD) (SN), 2019 WL 6684127, at *8 (S.D.N.Y. Dec. 6, 2019) (determining a defendant's failure to disclose his conviction was non-actionable because "it was a matter of public record"). And, finally, even if Oddity did have a duty to disclose, the nature and numbers of claims would not be material to an investor. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 539 (2d Cir. 1999) (explaining that a material claim must be one that would "assume[] actual significance in the deliberations of the reasonable

investor"). There were no substantial judgments against Oddity or lawsuits threatening a key aspect of its business or exposure from any one suit that presented a material financial risk. Instead, the lawsuits Plaintiffs cite are all run-of-the-mill suits common to any large retail business operating globally.

## CONCLUSION

As Plaintiffs have not pleaded any misrepresentations or omissions of material fact that could support any of their legal claims, Defendants' motion to dismiss (Dkt. No. 76) is GRANTED.

Dated: September 9, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge